Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The following were entered into by the parties in their Pre-Trial Agreement which was filed on July 29, 1996, and which is incorporated herein by reference, and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provision of the North Carolina Workers' Compensation Act at all relevant times.
2. ITT Specialty Risk Services, Inc., was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff's average weekly wage was $325.20, which yields a compensation rate of $216.81 per week.
5. The issues for determination are:
 a. Whether the plaintiff sustained an injury by accident arising out of and in the course of her employment on October 4, 1995, and if so, to what benefits may she be entitled.
 b. Whether the plaintiff gave timely notice of her injury, and
 c. If plaintiff's claim is found to be compensable, whether the defendants are entitled to a credit for unemployment compensation and short-term disability payment made to the plaintiff.
6. The parties stipulated that the plaintiff received short term disability benefits in the amount of $2,160.00 for the period from December 3, 1995 through May 5, 1996, for which the defendants would be entitled to a credit should this claim be found compensable.
7. The plaintiff received unemployment compensation from October 18, 1995 through November 4, 1995 at the rate of $198.00 per week, for which the defendants would be entitled to a credit should this claim be found to be compensable.
 ***********
Based upon the competent evidence of record herein, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner, plaintiff was a sixty-two year old female.
2. On or about October 4, 1995, the plaintiff had been employed with the defendant-employer for approximately seventeen and one-half years. Plaintiff's job primarily consisted of putting parts in racks to be shipped. Her job duties included lifting large parts with the assistance of a co-worker, opening a steel rack, and packing the part in the steel rack with the assistance of a co-worker.
3. On October 4, 1995, the plaintiff and co-worker Carol Tilley carried a large part to be placed in a steel rack. Plaintiff attempted to open the rack, but it would not open because "[i]t was rusted shut." The plaintiff placed her end of the part on the floor and attempted to open the rack by striking it with both hands. Plaintiff felt immediate pain in her left shoulder radiating down her arm. The racks stuck on a regular basis due to the rusty condition of most of the racks and the fact that no other provision had been made for unsticking them. Plaintiff exerted varying amounts of force to open the racks based upon how rusted the racks were. The particular rack that plaintiff was attempting to open was more difficult to open than usual.
4. Because some of the racks were sometimes difficult to open, defendant-employer usually provided a man to open the racks. That man was placed on another job, causing plaintiff to have to open the steel racks for herself. Plaintiff had used crowbars in the past to open racks that were stuck. Plaintiff was not able to determine whether she had had problems opening the particular rack that caused her injury before. The racks were not always difficult to open.
5. The steel racks sat outside in the weather, which caused rusting to occur. The racks were not designed to stick; and having to beat against a rack to loosen the rust in order to allow it to open was not a natural and probable consequence of the employment. Even though she had opened rusted steel racks by striking them in the past, this manner of opening the racks was a safety hazard and did not constitute a part of plaintiff's usual job.
6. The plaintiff first sought medical treatment from Dr. James Serene, an orthopedist, for the left shoulder on January 9, 1987, at which time she related a history of marked left shoulder pain since February of 1986. Dr. Serene diagnosed the plaintiff as having a possible mild rotator cuff tear with subsequent adhesive capsulitis and pain, for which he injected plaintiff's left shoulder joint with Xylocaine. Dr. Serene also prescribed pain medications for the plaintiff, and he observed that she had subacromial crepitus with abduction of the shoulder.
5. On July 12, 1991, the plaintiff returned to Dr. Serene with left shoulder pain. X-rays revealed slight spurring of the left shoulder and at the glenoid, which was consistent with some glenohumeral arthritis. Dr. Serene injected the subacromial bursa with Kenalog and Lidocaine, and prescribed Clinoril for pain.
6. On July 22, 1991, the plaintiff returned to Dr. Serene with complaints of severe shoulder pain, but not as bad as it had been. Dr. Serene provided additional pain medication.
7. On June 25, 1993, the plaintiff returned to Dr. Serene at which time she advised that her left shoulder had been doing much better until she reached up to get something, when the shoulder popped.
8. On September 19, 1995, the plaintiff saw Dr. David Hillsgrove, an orthopedic surgeon, with complaints of difficulty raising her left hand above her head and sleep problems if she rolled over on her left shoulder. An MRI was recommended for October 9, 1995.
9. On October 5, 1995, plaintiff returned to work and tried to work with only her right hand. When her supervisor, Uto Kutschenko, arrived, she reported her previous day's injury to him and he told her to talk to Greg Kellinger about the accident.
10. Later in the morning of October 5, 1995, the plaintiff and other employees were laid off from defendant-employer due to the "downsizing" of the department. That afternoon plaintiff returned to the plant and told Greg Kellinger about her accident, but he did not fill out an accident report.
11. Plaintiff had from time to time experienced flare-ups of pain in her left shoulder over the prior ten years. Three weeks before her October 4, 1995 injury, she had been treated for tendonitis of the left shoulder; however, plaintiff's tendonitis was not disabling.
12. Plaintiff presented herself to Dr. David C. Hillsgrove October 5, 1995, on which occasion she told Dr. Hillsgrove that she had reinjured her left shoulder due to the incident of the previous day. Dr. Hillsgrove determined that plaintiff had a rotator cuff tear of the left shoulder.
13. Dr. Hillsgrove opined that plaintiff's description of her accident was consistent with the rotator cuff injury to her left shoulder for which he treated her and that plaintiff's act of trying to unstick a rusted rack would have stressed her rotator cuff with the result that she could well experience a decreased range of motion in her left arm.
14. Dr. Hillsgrove performed surgery on plaintiff's left shoulder November 24, 1995. Following the surgery, Dr. Hillsgrove wrote plaintiff out of work indefinitely. Dr. Hillsgrove rated plaintiff's permanent partial disability to her left shoulder caused by her October 4, 1995 injury at twenty percent (20%).
15. Plaintiff returned to work with the defendant-employer for a light duty assignment March 1, 1996, but was informed by the defendant-employer that there was no light duty work available and that she was considered to be out on medical leave and not out on workers' compensation.
16. Plaintiff was permitted to return to work by defendant-employer May 20, 1996, and upon her arrival she was directed to several departments, none of which would provide her the light duty work required.
17. Thereafter, plaintiff sought other employment until a combination of heart problems and her shoulder problems made it impossible for her to continue her job search. As of August 27, 1997, plaintiff continued to be unemployed.
18. When plaintiff went out for surgery on her left shoulder on November 24, 1995, she was put out of work on medical leave because the defendant-employer said that she had not reported a work-related injury.
19. Plaintiff suffered a compensable injury by accident to her left shoulder on October 4, 1995 when she tore her rotator cuff trying to open a rusted rack.
20. Plaintiff's accident arose out of and in the course of her employment with the defendant-employer.
21. Plaintiff's left shoulder surgery was causally related to her October 4, 1995 injury.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. On October 4, 1995 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's injury on October 4, 1995, materially aggravated the pre-existing condition of her left shoulder, and also caused a new injury.
3. As a result of plaintiff's October 4, 1995 injury, she sustained a torn left rotator cuff ultimately requiring her to undergo corrective shoulder surgery on November 24, 1995, resulting in a 20% permanent partial impairment of the left shoulder. N.C. Gen. Stat. § 97-2(6) and § 97-31.
4. As a consequence of plaintiff's compensable injury to her left shoulder, plaintiff is entitled to have defendants pay temporary total disability compensation at the rate of $216.81 per week from October 6, 1995, through the date of hearing before the deputy commissioner and continuing until the plaintiff returns to work earning the same or greater wages or until further order of the Industrial Commission, except that defendant-employer is entitled to credit for the $198.00 per week which plaintiff received in unemployment insurance from October 18, 1995 through November 4, 1995 and for $2,160.00 which plaintiff received in short term disability benefits for the period from December 3, 1995 through May 5, 1996.
5. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of her injury for so long as such examinations, evaluations and treatments tend to effect a cure, give relief, or lessen her disability. N.C. Gen. Stat. § 97-57; N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provided for below, for plaintiff's compensable shoulder injury, defendant shall pay the plaintiff temporary total disability compensation at the rate of $216.81 per week from October 4, 1995, through the date of hearing before the deputy commissioner and continuing until the plaintiff returns to work earning the same or greater wages or until further order of the Industrial Commission, except that defendant-employer is entitled to credit for the $198.00 per week which plaintiff received in unemployment insurance from October 18, 1995 through November 4, 1995 and for $2,160.00 which plaintiff received in short term disability benefits for the period from December 3, 1995 through May 5, 1996. The accrued amounts shall be paid in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of her compensable injury for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph one of this Award shall be deducted from the sum to be paid the plaintiff and shall be paid directly to plaintiff's counsel; and, thereafter, plaintiff's counsel shall directly receive 25% of each week's disability compensation due the plaintiff.
4. Defendant shall pay the costs.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
DISSENTING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER